## PARNELL v. SOUTHERN KRAFT CORPORATION.

No. 6083.

District Court, S. D. Mississippi, S. D.
Dec. 31, 1931.

Mize & Mize & Thompson, of Gulfport, Miss., and Knapp & Babendreer, of Memphis, Tenn., for plaintiff.

Ford, White & Ford, of Pascagoula, Miss., for defendant.

HOLMES, District Judge.

The plaintiff was injured in the performance of his duties as an employee in the paper factory of the defendant. At the time of the accident he was engaged in hoisting a cylindrical steel core by means of an overhead crane operated by an electric motor. The cores were of different sizes, and, even when bare, were very heavy, weighing between seven and nine hundred pounds, according to the testimony of the plaintiff, and between a thousand and twelve hundred pounds, according to one of the witnesses for the defendant. When wound full of paper they usually weighed between sixteen and eighteen hundred pounds. Some of them weighed three or four thousand pounds.

The paper is manufactured out of wood. After it gets into the form of paper, it is wrapped on a roller. When it comes off of the roller, it goes to the cutter to be made into sheets, and is finally wrapped on steel cores. The core that was being lifted was taken from a pile of empty ones of various sizes stacked in a fourteen-foot space behind the cutter, in accordance with the custom in the factory. It was to be removed to the winding stand to be wrapped with paper, after which it would be called a reel, and put back in the space behind and north of the cutter provided for cores and reels to be stacked when the cutter was full. The employees had no discretion as to where to put them, but were required to stack them in the place men-

tioned. On the morning of the injury the cutter was full, and ten cores and reels of different sizes were stacked on the concrete floor in the place designated, being four on top of six others that were lying on the floor, making a pile eight or ten feet high. At the north of the pile, there were two concrete stationary chocks about eight inches long and five inches high, bolted to the floor, which prevented the cores or reels from rolling in that direction; but there were none at the other end, and nothing to keep them from rolling the other way, which was in the direction of the cutter, there being a space between the pile and the cutter into which the plaintiff's duties often required him to step, and into which he had stepped at the time of his injury. The cutter frame was not permitted to be used to chock the south end for the further reason that it damaged the paper.

At the time he was hurt, the plaintiff was in the act of picking up the core with the crane. As the core came up he saw a sheet of paper, that had become glued to it, hanging from it. The evidence is convincing that the cores have to be free of obstacles when carried over to be put upon the roller, and that it was the plaintiff's duty to remove anything of the kind. He says that, in order to get it off before it got out of his reach, it was necessary for him to take a couple of steps into the space south of the cores, which he did, and that, as he was pulling the paper off, the pile rolled down and crushed his leg, pinning him under it. He was held in this position about ten minutes before he could be extricated, and there is no doubt about the serious and permanent character of his injury, his diminished earning power, or that he suffered excruciating pain.

It does not positively appear from the evidence who placed the bottom row of cylinders in the pile, but the plaintiff had placed an eighteen hundred pound reel on top of the others immediately before the accident, and it is a fair deduction from all of the evidence that the plaintiff and his fellow servants, some of whom were working in different shifts, had stacked the cores and reels, but that they did so in the place provided and in the manner required by the defendant in the circumstances. Testimony was introduced to the effect that movable chocks were furnished by the defendant and should have been used by the employees, but this was denied by the plaintiff. The issue of fact as to whether they were furnished was submitted to and determined by the jury.

The court instructed the jury as favorably for the defendant as was requested, except it refused to give a peremptory instruction to find for the defendant. While it is true the defendant took a formal exception "to each of the three charges" given on behalf of the plaintiff, it pointed out no specific objection to any of them, and has assigned none in its brief on the motion for a new trial. The only ground of defense urged during the trial, or on this motion, was the absence of any negligence by the defendant that materially contributed directly and proximately to the injury. The question of defendant's negligence was left entirely to the jury, who returned a verdict for the plaintiff.

Under section 513 of the Mississippi Code of 1930, an employee such as the plaintiff does not assume the risk of injury resulting from the employer's negligence. Under section 511, contributory negligence is no defense, but only a cause to diminish the damages in the proportion that the employee's negligence contributed to the injury. The jury were properly instructed under these statutes, and whether the plaintiff assumed the risk or was guilty of contributory negligence, under this record, may be put out of consideration.

Neither is there any occasion for the application of the fellow servant doctrine as a defense, because the fellow servants who stacked the cores and reels did so in pursuance of the rule and practice of the defendant, in accordance with the custom in the factory, and there is nothing to show that they did it in a negligent manner, except in so far as the system or method under which they were working, authorized by the defendant, was negligent. If so, this was negligence for which the master is responsible.

Let us turn then to the proposition that there is no substantial evidence of defendant's negligence to support the verdict, so earnestly presented by counsel and solely relied upon by him.

The plaintiff contends that not only were there no stationary chocks at the south end, or grooves in the floor, to keep the pile from rolling or falling down upon him, but that the defendant failed to furnish any movable ones to be used for that purpose, and that none were available to the employees, if they had chosen to use them; also that the method of requiring different sizes of reels and cores to be stacked together, in the manner shown by the evidence, made them more likely to fall, which constituted negligence; and that his injury was directly and proximately caused by such negligence on the part of his employer, which injury a reasonably pru-

dent employer should have foreseen and could have avoided by the use of ordinary care. If he is correct as to these grounds of negligence, the verdict must stand, the resulting injury being clear.

On the other hand, the defendant contends that the plaintiff had no business to be in the space where he was hurt. While admitting that it was his duty to get the paper off, it maintains that, by the use of a pulley, he could have so operated the crane as to move the core to one side and into a safe place where he would not have been injured by the falling down of the pile. If these facts were true, there was no negligence, and the verdict should have been for the defendant.

Whether the defendant was guilty of material negligence, which directly and proximately contributed to the injury, turns upon the question whether it was the plaintiff's duty to step into the space above mentioned, between the cores and the cutter, in order to pull the piece of paper off which was stuck on the core with glue.

Much evidence was offered by each side. As to some of the issues, there was a conflict in the testimony which only the jury could settle; as to others, impartial men might reasonably have drawn different conclusions from the same evidence. The jury by their verdict have resolved all issues of fact and deductions therefrom in favor of the plaintiff.

For the purpose of considering the requested peremptory instruction and this motion, it may be regarded as established: (1) That it was the duty of the plaintiff to be where he was at the time he was injured; (2) that, having put stationary concrete chocks at the north end of the place where the employees were intended and regularly required by the master to stack the cores, it was negligent for the defendant to fail to put similar ones at the south end, or to have grooves in the floor, or to provide some other means of preventing the cores from falling upon its employees while at work; (3) that suitable appliances in sufficient number in the form of movable chocks were not furnished by the master; (4) that, in a large factory with great numbers of operatives working in separate shifts, the master was negligent in requiring cylindrical cores and reels of different sizes and ponderous weights to be stacked on a smooth floor, where they were likely to roll or fall, without providing any method or furnishing any appliances to keep them from rolling and falling upon its employees; and, finally, (5) that some or all of these protective things could have been done at a small expense, without interfering with the reasonably efficient and economical operation of the plant, and should have been done by an ordinarily prudent master in the exercise of reasonable care to avoid injury to its servants.

With these facts established and conclusions drawn, it was a logical and necessary step under the evidence to find that the plaintiff was injured as a direct and proximate result of defendant's negligence and was entitled to recover. The requested peremptory instruction to find for the defendant was properly refused, and the motion for a new trial should be overruled.

An order may be entered accordingly.